544 So.2d 687 (1989)
James L. SMITH, Jr., Plaintiff-Appellee,
v.
HUGHES WOOD PRODUCTS, INC., et al., Defendants-Appellants.
No. 88-259.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1989.
Bradley, Wallace & O'Neal, David L. Wallace, Deridder, for plaintiff/appellee.
Tillman & Anderson, F. Clay Tillman, Jr., Leesville, for defendant/appellant.
Smith & Ford, Chris Smith III, Leesville, for defendant/appellee.
Charles A. Jones III, De Ridder, for defendant.
Before FORET, YELVERTON and KING, JJ.
YELVERTON, Judge.
This appeal is by Hughes Wood Products, Inc. (Hughes), a defendant found liable in the amount of $8,596 for timber damage. Denying its liability, Hughes presents three issues on appeal. The first is whether an employer/employee relationship, or an independent contract relationship existed between Hughes and James Richmond, another defendant, who actually cut and hauled the timber. The second is whether, under La.R.S. 3:4278.1, dealing with liability for timber trespasses and damage, in order to find an employer liable *688 (if Hughes was an employer) proof is required that the employer authorized or directed his employee to cut and haul the timber. The third issue has to do with prescription.
Suit was filed by James L. Smith, Jr., the owner of about 135 acres in Beauregard Parish, against James Richmond and Hughes for a trespass and timber damage on the plaintiff's property. After a trial on the merits, the district court found that Richmond had trespassed upon Smith's land and had wrongfully cut timber thereon having a value of $8,596, and rendered judgment against Richmond for that amount, plus costs. The district court also found that the relationship between Richmond and Hughes was one of employee/employer, and found that Hughes was vicariously liable with Richmond. Only Hughes has appealed. The actual wrongful taking, and the evaluation of the timber taken, are facts not disputed on the appeal; only the three issues briefly described above are before us, and we will now address them.
As to the first and most important issue, whether an employment relationship existed between Hughes Wood Products and Richmond, the trial court has provided us with excellent reasons for judgment, which we here quote and adopt as our own:
The only remaining issue is whether defendant Hughes Wood Products, Inc. is vicariously liable to Mr. Smith for the damages caused by Mr. Richmond. If Richmond was an employee of Hughes Wood Products at the time of the trespass, then Hughes is liable. On the other hand, if Richmond was an independent contractor, then Hughes is not liable.
In determining whether a relationship is one of employer/employee or of independent contractor/contractee, a variety of factors must be considered. Each case must be decided according to its facts. See Amyx vs. Henry & Hall, 227 La. 364, 79 So.2d 483 (La.1955), where the Supreme Court said:
`In determining the nature of a contract as is here presented, the many factors growing out of its terms and conditions, including the attitude of the contracting parties, are to be considered. No one test is conclusive.
The term "independent contractor", as was said in the case of Gallaher v. Ricketts, La.App. 187 So. 351, 355, "connotes a freedom of action and choice in respect of the undertaking and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants." A contractee-independent contractor relationship presupposes a contract between the parties. It likewise presupposes the independent nature of his business, and is not exclusive as to the means whereby it is accomplished. It should appear that the contract calls for a specific piece work as a unit to be done according to his own methods, without being subject to the control and direction, in the performance of the service, of his employer, except as to the result of the services to be rendered. It must also appear that a specified price for the overall undertaking is agreed upon; that its duration is for a specified time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.
It is well settled by our jurisprudence that besides other factors, the most important test in determining "whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer." It is also well settled that whether the employer "actually exercises control or supervision" over the movements and the services rendered by the employee, such a fact is of no great moment, the "important question is whether, from the nature of the relationship, he had the right to do so."'
Also see Roberts v. State, through La. Health, etc., 404 So.2d 1221 (La.1981); Hickman v. Southern Pacific Transport Co., 262 La. 102, 262 So.2d 385 (La.1972); Smith v. Zellerbach, 486 So. *689 2d 798 (La.App. 1st Cir.1986); and Poynor v. Cure, 443 So.2d 1151 (La.App. 5th Cir.1983). Those cases indicate that the single most important factor to be considered in determining whether an employer-employee relationship exists is the right of the employer to control the work of the employee. In applying this test it is not the supervision and control which is actually exercised which is significant, but whether, from the nature of the relationship, the right to do so exists. Additionally, Amyx and Hickman place much importance on whether the arrangement between the parties is terminable at the will of either party. In Hickman, the court said:
`Another, and perhaps the most telling, fault in the contention that these facts present an independent contractor relationship is the stipulation that the contract between the parties could be terminated by either party upon written notice to the other, without incurring liability for breach; and the further stipulation that Southern Pacific transport had the right to terminate the relationship at any time when Fowler's services "shall be unsatisfactory" to Southern Pacific Transport.
This right to terminate the relationship without cause, where no term of employment is prescribed, is characteristic of the master and servant or employer-employee relationship. The right is at the same time antagonistic to the independent contractor relationship. (Citations omitted).'
In Amyx, the court said:
`Defendant was not obligated to keep the services of Guin until he had finished any specified amount of work or for any definite period of time, nor was Guin obligated to "stay on" the job for any particular time or for the completion of the hauling of a specified or contracted quantity. Either could have terminated the relationship at his pleasure, and neither might have had any cause of action to recover damages as a result of a breach of the contract, or by the sudden, arbitrary or capricious termination of the work relationship between them. Mutuality of obligations being the essence of contracts, it is undisputed that Guin and the defendant had no obligations whatsoever, except in respect to their own respective wishes, and no liability could legally attach by exercising this privilege.
We must conclude that being terminable at the will of either party that fact alone is sufficient, when considering the other circumstances of the employment, to signify that the contract created a relationship of master and servant.'
From 1983 to 1986 Richmond was a wood producer for Hughes. There was no written contract covering their relationship. Richmond considered that he was working for and employed by Hughes during that time. He furnished his own truck and equipment, but Hughes financed some of the equipment for him and also furnished insurance coverage for him.
Most of the time Richmond cut and hauled timber which Hughes had purchased from landowners, but ocassionally, [sic] as in this case, he worked on timber which he had acquired from a landowner. Where he made the arrangements for the timber with a landowner, checks for the stumpage were sent to the owner by Hughes. That was done in this case.
All timber cut and hauled by Richmond, whether purchased from a landowner by him or by Hughes, was delivered to various mills in southwest Louisiana and southeast Texas for the account of Hughes. The mills would not deal directly with Richmond. Wood was accepted from him only because of his relationship with Hughes.
Theoretically Richmond may have been free to work as he wished, but in economic reality he was subject to the control and direction of Hughes. If he wanted to cut and haul wood to Hughes, he had to cut and haul when and where Hughes directed. If he failed to do that, he could be summarily discharged by *690 Hughes at any time because there was no contract for a specific period of time and the arrangement was subject to termination or discontinuance at the will of either party. As was stated in Hickman, the right to terminate the relationship without cause, where no term of employment is prescribed, is characteristic of the master and servant or employer-employee relationship and antagonistic to the independent contractor relationship.
After careful consideration of all relevant evidence in this case and the applicable law, the Court finds that defendant Richmond was an employee of defendant Hughes Wood Products when the timber trespass occurred. Accordingly, Hughes Wood Products will be held liable in solido with Richmond for the damages sustained by Mr. Smith.
The second issue in the case has to do with an interpretation of La.R.S. 3:4278.1. Subsection (A) of the statute reads:
A. It shall be unlawful for any person to cut, fell, destroy or remove any trees, or to authorize or direct his agent or employee to cut, fell, destroy or remove any trees, growing or lying on the land of another, without the consent of the owner or legal possessor.
On the basis of this language Hughes argues that, even if Richmond was an employee, the responsibility of his employer is statutorily limited to the situation where there is proof that the employer actually authorized or directed his employee to do the unlawful things. We do not agree that this statute creates a cause of action enforceable against an employer for the actions of his employee only when there is proof that the employer actively authorized or directed his employee to cut and haul the timber. The primary purpose of R.S. 3:4278.1, as is evident by reading the remaining subsections (B) through (F), is to impose the penalty of treble damages on violators who flagrantly disregard the property rights of other timber owners. Jones v. Don Edwards Timber Co., Inc., 516 So.2d 1256 (La.App. 2d Cir.1987). In the present case the trial court found that the defendants were in good faith, and thus liable only for actual compensatory damages. Even if we were to assume that the above quoted language of the statute requires some active degree of participation in the tort beyond the relationship of respondeat superior, the tort of simple timber trespass and damage does not rely for its existence on the above statutory language, but has its source in C.C. article 2315. The rule of respondeat superior applies in this case to make Hughes responsible. La.C.C. art. 2320.
The final assignment of error has to do with a plea of prescription. Appellant complains that the trial court never ruled on the exception.
At the beginning of the trial Hughes filed an exception of prescription of one year. The trial court referred the exception to the merits. In the trial court's reasons for judgment, no mention was made of the exception, nor does the judgment itself specifically overrule the exception.
The general rule is that where a judgment is silent with respect to any demand which was an issue in the case under the pleadings, such silence constitutes an absolute rejection of such demand. Sun Finance Company, Inc. v. Jackson, 525 So.2d 532 (La.1988). This rule is applicable in the present case.
The presumption that the trial court overruled the exception of prescription is supported by the prescription facts in the record. La.C.C. art. 3493 provides that when damage is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage. In the present case the plaintiff testified that he lived in Lafayette, and that the property, which lay between DeRidder and Merryville, was from 130 to 150 miles from his home. He said that the land was unimproved, only woodland, and he testified that he had not been on the property for over a year, when in March 1985 he discovered that the trees had been cut and removed. The suit was filed in November *691 1985. This was within one year from the discovery of the damage. This assignment of error has no merit.
For the foregoing reasons, the judgment of the trial court is affirmed with costs of appeal to be paid by Hughes Wood Products, Inc.
AFFIRMED.