722 So.2d 119 (1998)
Ronald GEORGE, Plaintiff-Appellee,
v.
WAL-MART STORES, INC., et al., Defendants-Appellants.
No. 98-850.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1998.
*120 Terry G. Aubin, Pineville, for Ronald George.
Philip Andre Fontenot, Lafayette, for Wal-Mart Stores, Inc., et al.
Before COOKS, SAUNDERS and WOODARD, JJ.
WOODARD, Judge.
Alleging negligence pursuant to La.R.S. 9:2800.6, Mr. Ronald George sued Wal-Mart for his injuries arising out of a trip and fall accident in Wal-Mart's Pineville, Louisiana, store, on September 1, 1994. The trial court found Wal-Mart negligent and awarded him $30,000.00 in general damages, $5,168.43 in past medical expenses, $5,452.00 in future medical expenses, with legal interest from the date of the judicial demand, as well as expert and court costs. For the foregoing reasons, we affirm in part and reverse in part.

FACTS
On September 1, 1994 at approximately 2:30 p.m., Mr. George stopped at the Wal-Mart store in Pineville, Louisiana to purchase some carburetor cleaner fluid. Three sets of doors provided a public entrance, and he entered the one to the far right. Immediately, he had to veer to his left because he encountered to his right a plant display lining a rail separating the entrance from the exit. This display consisted of tiers of boards set up on cinder blocks with assorted plants arrangements that were placed on the boards. Wheelchairs were between the plant display and the entrance along the rail. Mr. George noticed the plant, as well as a portion of the wheelchair folded up, facing the entrance aisle.
Wal-Mart had a specific policy concerning wheelchairs. It had to be kept by the entrance of the store for the customer's convenience or in case of an emergency. Once a chair was no longer needed by a customer, a Wal-Mart employee had to take it from the exit area back to the entrance area, fold it, and position it in such a fashion that it faced the rear of the store.
Mr. George also observed Ms. Joyce L. Michael, a Wal-Mart employee, working that day as a greeter, standing in the middle of the entrance, and assisting a customer. Wal-Mart employs greeters to acknowledge customers as they enter the front door, and to tag merchandise that they may be returning. They are also responsible for maintaining the entrance area and making sure that everything is in order. Ms. Michael had been a Wal-Mart employee for only two weeks prior to the accident, but she had received safety training and was aware of Wal-Mart's safety policies, such as wiping up spills, clearing obstructions, taping down rugs, and keeping passageways in order.
Once he entered the store, Mr. George proceeded through an area between the plant display, Ms. Michael, and the customer she *121 was assisting. In doing so, he caught his foot on the unfolded foot-rest of the wheelchair facing the entrance aisle. He had not seen the unfolded foot-rest because it was hidden by vines from the plant display. He fell to the floor with his right hand extended, yanking the wheelchair into the aisle, and knocking over some of the boards and plants. Embarrassed, he quickly got up and apologized to Ms. Michael for disturbing the display. He told her that he was not hurt and proceeded with his shopping.
Ms. Michael testified that she cleaned up the area and pushed the wheelchair into its correct position against the railing facing the back of the store. She was under the impression that the chair "wasn't exactly sticking out" from behind the display but admitted that it was not supposed to be facing the aisle.
Approximately five to ten minutes later, Mr. George told Ms. Kathy Edwards, the Store's assistant manager, that his right arm was hurt and swollen and filed an accident report. Ms. Edwards took pictures of the display once reassembled, but Ms. Michael failed to tell her that she had moved the wheelchair back to its correct position after Mr. George's fall.
The next day, Mr. George sought treatment at Huey P. Long Hospital (HPLH) after experiencing pain in his right wrist. He was examined by Wal-Mart's doctor, Homi S. Cooper, M.D., from whom he received conservative treatment. Dr. Cooper referred him to Dr. John S. McCabe, M.D., in October of 1994. Mr. George received treatment from Dr. Cooper and Dr. McCabe until January of 1995. Because Mr. George was still suffering from swelling and pain, he consulted Dr. Michael C. Genoff, M.D., on February 9, 1995. Dr. Genoff made the following observations:
There was point tenderness over the ulnar head and diffuse tenderness over the ulnar carpus. There was a grinding sensation with pronation and supination. Sensation was decreased over the ulnar one-half of the ring and small finger. Tinel's sign was positive over the ulnar nerve. The temperature in the right hand was less than the left.
....
It is my impression that this patient has a lunatrotriquetral ligament tear with clinical ulnar nerve entrapment at Guyon's canal.
After an arthrogram test performed on February 14, 1995, Dr. Genoff made the following findings:
1. There is an abnormal communication between the radiocarpal and mid carpal joint spaces through the lunate/ triquetrial interspace. This occurs on both the radiocarpal and mid carpal injections and is most in keeping with an L.T. Ligamentous tear.
2. The radioulnar injection has a normal arthrographic appearance. The proximal surface of the TFCC appears smooth. I see no convincing evidence for presence of a TFCC tear.
3. The right wrist otherwise has a normal arthrographic appearance.
Dr. Genoff then recommended surgical procedure which was not performed because Mr. George could not afford it and had no medical insurance. In preparation for litigation, Dr. Genoff reexamined him on September 30, 1997, to determine whether his earlier prognosis was still valid. The examination generated essentially the same findings than that he had presented on previous visits.
Mr. George filed suit against Wal-Mart on September 1, 1995. Trial was held on October 16, 1997. In a judgment rendered on March 10, 1998, the trial court found that Wal-Mart was liable, pursuant to La.R.S. 9:2800.6, and awarded him $30,000.00 in general damages, $5,168.43 in past medical expenses, and $5,452.00 in future medical expenses, as well as $1,867.80 in expert fees. Wal-Mart now appeals.

LAW

Negligence
Wal-Mart alleges that the trial court clearly erred in finding that it was liable for injuries sustained by Mr. George in the trip and fall accident of September 1, 1994. More specifically, it claims that the trial court's finding that the wheelchair presented *122 an unreasonable risk of harm for the customer and a reasonably foreseeable risk of harm for Wal-Mart is a manifest error.
At the outset, we note that an action for negligence, brought by a person against a merchant, for damages resulting from injuries sustained in a trip and fall accident, is governed by the principles set forth in La. R.S. 9:2800.6. That statute provides in pertinent part:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
In the instant case, the trial court found that Mr. George had met his burden of proving the three statutory requirements. On appeal, Wal-Mart only takes issue with the finding that Mr. George had satisfied his burden of proving that the wheelchair presented an unreasonable risk of harm and a reasonably foreseeable risk of harm.
The supreme court in Tillman v. Johnson, 612 So.2d 70 (La.1993), stated that whether or not a condition presents an unreasonable risk of harm "is a disputed issue of mixed fact and law or policy that is peculiarly a question for the jury or the trier of the facts." Later in Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98); 708 So.2d 362, the supreme court specified that such a determination is subject to review under the manifest error standard. Thus, we must uphold the trial court's decision if we are convinced, from a review of the entirety of the record, that it has a reasonable factual basis. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993).
Wal-Mart argues that the reasons provided by the trial court for its judgment were insufficient. It asserts that the trial court should have decided whether the social value and utility of the hazard outweigh its potential risks of harm. For the foregoing reasons, we find no merit in that argument. The trial court justified its judgment as follows:
Plaintiff has the burden of proving that the wheelchair at the time of the accident created an unreasonable risk of harm that was reasonably foreseeable. Wal-Mart was obviously aware of the risk that a customer might trip over the chairs in the entranceway or they would not have a safety policy specifically addressing that risk. The policy required the chairs to be handled only by Wal-Mart employees and placed in a certain position: folded up and facing the back of the store.
Plaintiff has proved, through his testimony and that of Ms. Mikel, [sic] that the wheelchair was facing the entrance aisle, not the back of the store and that the foot rest were down and not folded up. Therefore, the placement of this wheelchair in this location was unreasonably dangerous.
(Emphasis added).
The trial court was also impressed with the fact that the wheelchair was not positioned properly and that a foot-rest was "sticking out." It is especially noteworthy that this violation was compounded by the placement of plants over the protruding foot-rest, making it invisible to a passerby. One cannot be expected to see what is not seeable. Once it *123 was proven that a Wal-Mart employee had violated its safety procedure designed to prevent this very accident, Wal-Mart, in effect, made an admission of negligence by virtue of its acknowledgment of the hazard in its own safety policy. By establishing this policy and because of the ease by which it could be accomplished, it must be presumed that Wal-Mart had already determined that the social value and utility of the hazard outweighed its potential risks of harm, and we agree. Wal-Mart cannot now ignore and circumvent its own policy and responsibility because it will cost them money, and we need not look further for legal justification. The trial court did not manifestly err in concluding that the wheelchair, as positioned at the time of the accident, presented an unreasonable risk of harm.
Second, Wal-Mart argues that the trial court erred in finding that Mr. George had met his burden of proving Wal-Mart's liability pursuant to La.R.S. 9:2800.6(B)(1) because he did not show that the risk of harm was reasonably foreseeable. Wal-Mart asserts that approximately 5,000 persons go through its doors every day, that it was not different on September 1, 1994, and that the type of accident that Mr. George incurred is the only one recorded to date. Therefore, concludes Wal-Mart, the probability that such accident may occur is near zero; thus, not reasonably foreseeable.
For the same reasons stated above, we, again, find no merit in Wal-Mart's argument. Moreover, this view does not reflect the circumstances of Mr. George's accident. Wal-Mart does not bring forward any evidence establishing how many person went through the rightmost entrance while the wheelchair was misplaced, on September 1, 1994, as Mr. George had.
Thus, we do not find manifest error in this decision that Mr. George had met his burden of proving that the risk of harm presented by the position of the wheelchair at the time of the accident was reasonably foreseeable.

COMPARATIVE FAULT
Wal-Mart urges that the trial court erred because it did not specifically address the issue of Mr. George's comparative fault.
The general rule pertaining to unanswered pleadings is that they are to be interpreted as an absolute rejection. Smith v. Hughes Wood Products, Inc., 544 So.2d 687 (La.App. 3 Cir.1989). However, we note the general rule in this case must give way to the application of La.Code Civ.P. art.1917, which provides in pertinent parts:
In nonjury cases to recover damages for injury, death or loss, whether or not requested to do so by a party, the court shall make specific findings that shall include those matters to which reference is made in Paragraph C of Article 1812 of this Code. These findings need not include reasons for judgment.
(Emphasis ours.)
In turn, La. Code Civ.P. art. 1812(C) provides, in part:
C. In cases to recover damages for injury, death, or loss, the court at the request of any party shall submit to the jury special written questions inquiring as to:
....
(3) If appropriate, whether there was negligence attributable to any party claiming damages....
(Emphasis ours.) In other words, La.Code Civ.P. arts.1917 and 1812(C) dictate that the trial court's decision on the issue of comparative negligence must be expressed. Thus, as a matter of law, we find that the trial court erred in failing to indicate in the judgment whether or not it had considered the issue of Mr. George's comparative negligence.
Wal-Mart argues that the wheelchair was obvious, that Mr. George admitted having seen it, that he did not rush into the store, and that he would have been able to avoid it had he used reasonable care. We find no merit in this argument. On the contrary, the record tells a different story. Although Mr. George noticed the presence of a wheelchair, he did not see that the foot-rest was unfolded, because it was hidden by vines from the store's plant display which Wal-Mart had constructed.
After conducting a de novo review, we find that Mr. George deserves no fault. Thus, we affirm the trial court's decision and find Wal-Mart *124 one-hundred-percent liable for his accident.

DAMAGES
Wal-Mart contends that the trial court abused its discretion in awarding Mr. George $30,000.00 in general damages.
It is well settled that "`[g]eneral damages' are those which cannot be fixed with pecuniary exactitude; they involve mental or physical pain and suffering, inconvenience, loss of intellectual gratification, or other losses of life or lifestyle which cannot be definitely measured in monetary terms." Craven v. Universal Life Ins. Co., 95-1168 (La.App. 3 Cir. 3/6/96); 670 So.2d 1358, 1368, writ denied, 96-1332 (La.9/27/96); 679 So.2d 1355; Boswell v. Roy O. Martin Lumber Co., Inc., 363 So.2d 506 (La.1978).
It is also well settled that the finder of fact has "much discretion" in awarding general damages. See Reck v. Stevens, 373 So.2d 498 (La.1979). Thus, on review, an appellate court may reverse a trial court's award of general damages only upon finding that the trial court abused its discretion. The supreme court inYoun v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La. 1993); cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994) specified our role as follows:
[T]he role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
The supreme court in Youn also specified the type of inquiry that we should perform to determine whether or not a trial court abused its discretion. The court stated:
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges [ ... ] is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
....
When these and other factors are properly considered under the standards discussed above, we cannot say that the trial judge abused his discretion in fixing the generous awards of general damages. The awards are not obviously the result of passion or prejudice, and they bear a reasonable relationship to the elements of the proved damages. Many rational triers of fact could have decided that a lower award is more appropriate, but we cannot conclude from the entirety of the evidence in this record, viewed in the light most favorable to the prevailing party in the trial court, that a rational trier of fact could not have fixed the awards of general damages at the level set by the trial judge or that this is one of those "exceptional cases where such awards are so gross as to be contrary to the right reason."
Id. at 1261. (citations omitted.)
Following this principle set forth by the supreme court in Youn, we cannot say that the trial court abused its "much discretion" by setting the amount of general damages to $30,000.00. In its reasons for judgment, the court cases stated: "There is no doubt that the petitioner fell in Wal-Mart on September 1, 1994 and that he felt pain in his wrist prior to leaving the store." The trial court relied greatly on Dr. Genoff's diagnosis to find that Mr. George suffered a ligament tear, an ulnar nerve entrapment, and a sprain of the cervical spine, and that such a condition, which generates pain and constant swelling of the right wrist, required surgical procedure. As a result, Mr. George must refrain from certain activities because of a loss of *125 strength in his wrist. Being right handed, he cannot perform certain domestic and working tasks.
Therefore, we find that the award bears a reasonable relationship to the element of the proved damages, and we do not find that this is "one of those exceptional cases" were the award is contrary to "the right reason."

FUTURE MEDICAL EXPENSE
Wal-Mart finally maintains that the trial court erred in awarding Mr. George $2,528.00 for fusion surgery and for the future pain and suffering pertaining to it.
It is well settled that the plaintiff has the burden of proving that it is more probable than not that future medical expense will be incurred. Baker v. Freeman, 97-604 (La.App. 3 Cir. 10/29/97); 702 So.2d 1140.
In the instant case, the trial court made the following remarks:
Dr. Genoff also stated that depending upon the result of those two procedures, chances are forty to fifty percent that he will also have to perform a fusion of the Lunate and Triquetrum bones of the wrist. However, he testified he would have to wait and evaluate the condition after the first two procedures before ordering a fusion. If the fusion is necessary, it will take six to ten weeks of post-surgery immobilization of the wrist with a splint and then a cast, then several weeks thereafter of physical therapy.
(Emphasis ours.)
Based upon the trial court's findings, we do not find that it is more probable than not that Mr. George will have to undergo such surgery. We thus find that the trial court erred in granting an award for future medical expenses in the amount of $2,528.00 for the cost of the fusion procedure.

CONCLUSION
For the reasons stated above, we find that the trial court did not err in finding Wal-Mart negligent and granting Mr. George $30,000.00 in general damages. We do not deem it appropriate to apportion any degree of fault to Mr. George in the occurrence of the accident. However, we reverse the trial court's decision, granting Mr. George $2,528.00 for the cost of the fusion procedure. Court costs are assessed one-third to Mr. George, two-thirds to Wal-mart.
AFFIRMED IN PART AND REVERSED IN PART.