847 So.2d 107 (2003)
Wade SINGLETON, Plaintiff-Appellant,
v.
Mary Ann Booker, Ed BOOKER, J.D. Williams and Burns Forest Products, Defendants-Appellees.
No. 37,198-CA.
Court of Appeal of Louisiana, Second Circuit.
May 14, 2003.
Rehearing Denied June 19, 2003.
Hudson, Potts & Bernstein, By D. Brian Allen, Brady D. King, II, Monroe, for Appellant.
*108 Bobby L. Culpepper, Jonesboro, for Appellees.
Before BROWN, GASKINS and MOORE, JJ.
GASKINS, J.
The plaintiff, Wade Singleton, appeals a trial court ruling granting summary judgment in favor of one of the defendants, Burns Forest Products, Inc. For the reasons set forth below, we reverse and remand.

FACTS
On March 3, 2000, Singleton filed suit against Mary Ann Booker, Ed Booker, J.D. Williams, and Burns Forest Products, Inc. (Burns). According to Singleton, in 1994 he purchased a 3.41-acre tract from Mary Ann Booker. He then excavated a half-acre pond on his property and stocked it with fish. Mary Ann Booker and her brother-in-law, Ed Booker, were alleged to be the owners of property adjacent to Singleton's tract. The plaintiff claimed that in March 1999, Mary Ann Booker and/or Ed Booker caused timber to be removed from their property adjacent to Singleton's property, and in the immediate area of his pond. Singleton asserted that one or both of these defendants contracted either with Burns or Williams to conduct the logging operations. He urged that, as a result of those operations, the pond became contaminated with hydrocarbons which leaked from equipment owned and/or operated by Williams and/or Burns, damaging the pond and killing the fish. Singleton asserted that this resulted in loss of enjoyment of the pond.
Additionally, Singleton claimed that the logging operations resulted in serious erosion to the Bookers' property, causing soil and water to flow into his pond. According to the plaintiff, this flow caused silt to accumulate in his pond, decreasing its depth, and preventing him from maintaining fish stock in the pond.
J.D. Williams, the individual who actually cut the timber on the Bookers' property, subsequently died and was dismissed from the lawsuit. Burns filed a motion for summary judgment alleging that there were no genuine issues of material fact with respect to any liability by Burns to the plaintiff. According to Burns, Williams was an independent contractor, not an employee. The company asserted that Williams was solely responsible for any damages incurred by the plaintiff.
In support of the motion for summary judgment, Burns attached the affidavit of Joe D. Burns, the president of Burns, who attested to his personal knowledge of the lawsuit and Burns' lack of involvement. Joe Burns stated that Burns did not contract with either Ed Booker or Mary Ann Booker to conduct logging operations on their property; that Burns conducted no logging operations on their property; that Burns had no equipment owned or operated by it on the property at the time in question or at any other time; and that at no time was Williams an employee of Burns. He stated that Williams was an independent contractor; that Burns had nothing to do with buying any timber rights from the Bookers; that Burns did not negotiate with the landowners and did not set the terms of any logging job; and that Burns had no control as to the time, manner, quantity or price of any of the operations or negotiations by Williams with the landowners. He asserted that Williams used his own equipment to perform the timber cutting operation; that Williams was free to work in any manner that he chose; and that while some of the timber cut from the property apparently was purchased by Burns from Williams, *109 the purchase was Burns' sole involvement in the matter.
In opposition to the motion for summary judgment, Singleton offered the deposition of Williams taken in April 2001. At his deposition, Williams was asked for whom he worked, and responded "I haul under Joe Burns." Although Williams indicated that he used his own equipment, he hauled the logs he cut to the mill under Burns' name and was covered under Burns' insurance. Williams said that he had no insurance other than with Burns. When asked how long he had been working under Mr. Burns, he responded "About thirty-two years." He indicated that Burns paid him by the thousand and by the cord, and that he did not work under anyone else. Williams stated that he was required to keep Burns informed as to where he was cutting. He also explained that he could not haul to the mill "straight under me," but had to "haul under [a] middleman."
Mary Ann Booker was Williams' sister, and Williams was contacted by the Bookers about cutting the timber from their property. Prior to beginning the timber cutting, Williams got "timbermen" employed by Burns to "flag" the property so that Williams would not cut timber from anyone else's land. Williams' deposition testimony indicated that he had to tell Burns whose timber he would be cutting and where he would be cutting prior to beginning a job so that the boundaries of the job could be marked.
Williams indicated that after Singleton began to "raise sand" after the timber had been cut, Burns sent employees to look at the property in question. Williams indicated Singleton did not contact Williams about the alleged problem, but instead "he had a lawyer to send a letter to the office and Mr. Joe [Burns] called me in, so we goes over there and see what was going on...." When asked if Singleton understood that Williams worked "under Mr. Burns," Williams responded in the affirmative.
Furthermore, after the problem arose, Williams indicated that "Mr. Joe [Burns] had a boy to take the dozer to go over there and smooth out the road, and I bought the fertilizer and the grass."
The motion for summary judgment was heard on August 19, 2002. On October 21, 2002, the trial court granted summary judgment in favor of Burns, dismissing Singleton's claims against Burns with prejudice.

DISCUSSION
On appeal, the plaintiff asserts that the trial court erred in granting summary judgment where a genuine issue of material fact exists as to whether Williams was an employee of Burns or an independent contractor.
Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Hamdan v. State Farm Mutual Automobile Insurance Co., 36,883 (La.App.2d Cir.3/5/03), 839 So.2d 1017.
The distinction between employee and independent contractor status is a factual determination that must be decided *110 on a case-by-case basis, taking into consideration the total economic relationship between the parties and the various factors weighing either in favor of or against an employer-employee relationship. The most important element is the right of control and supervision over an individual. Powell v. Fuentes, 34,666 (La.App.2d Cir.5/9/01), 786 So.2d 277, writ denied, XXXX-XXXX (La.9/21/01), 797 So.2d 674; Estate of Wilburn v. Leggio, 36,534 (La. App.2d Cir.3/19/03), 842 So.2d 1175.
To come straight to the pertinent point in this appeal, if a genuine issue of material fact exists as to whether Williams was an employee of Burns, then summary judgment is inappropriate. After reviewing the record de novo, we conclude that the deposition testimony of Williams creates a genuine issue of material fact in this regard.
The facts of Smith v. Hughes Wood Products Inc., 544 So.2d 687 (La.App. 3d Cir.1989), bear a strong resemblance to those asserted by Williams in his deposition concerning his relationship with Burns. In Smith, Richmond was a defendant along with Hughes Wood Products, Inc. in a suit for trespass and timber damage on the plaintiff's property. The evidence showed that from 1983 to 1986 Richmond was a wood producer for Hughes. There was no written contract covering their relationship, but Richmond considered that he was working for and employed by Hughes during that time. Although Richmond furnished his own truck and equipment, Hughes financed some of the equipment for him and also furnished insurance coverage for him. Most of the time, Richmond cut and hauled timber which Hughes had purchased from landowners, but occasionally Richmond worked on timber which he had acquired from a landowner. All timber cut and hauled by Richmond, whether purchased directly by Richmond from a landowner or by Hughes, was delivered to various mills for the account of Hughes. The mills would not deal directly with Richmond, but would accept wood from him only because of his relationship with Hughes.
The appellate court in Smith noted that Richmond theoretically may have been free to work as he wished, but "in economic reality" he was subject to the control and direction of Hughes. If Richmond wanted to cut and haul wood for Hughes, he had to cut and haul when and where Hughes directed, and if he failed to do so, he could be discharged by Hughes at any time because there was no contract for a specific period of time and the arrangement was subject to termination or discontinuance at the will of either party. After considering all the relevant evidence, the appellate court concluded that Richmond was an employee of Hughes and that Hughes was liable in solido with Richmond for damages sustained by Smith.
The third circuit found no meaningful grounds upon which to distinguish Smith in the case of Saucier v. Bunkie Wood Products Company, XXXX-XXXX (La.App. 3d Cir.12/15/99), 759 So.2d 794. Saucier is another case in which a wood harvester was found "in terms of economic reality" to be an employee rather than an independent contractor. See also Green v. Bobby A. Freeman Estate, XXXX-XXXX (La.App. 3d Cir.4/5/00), 759 So.2d 201. See and compare Ledent v. Guaranty National Insurance Company, 31,346 (La.App.2d Cir.12/28/98), 723 So.2d 531.
We agree with the third circuit's reasoning in Smith, supra, that a wood cutter can, in economic reality, be the employee of one for whom he ordinarily cuts and hauls timber, and under whose name the wood is accepted by mills. In the instant case, Williams had been "working under" Burns for more than 30 years, and was *111 insured only by Burns. Burns' employees "flagged" property for Williams before he cut timber. Williams stated that he was required to keep Burns informed of where he was cutting timber. With respect to the timber cutting at issue here, Singleton contacted Burns about the alleged damage, and Burns apparently responded by having an employee do dozer work on the property where the timber was cut in an effort to alleviate the problem. Accordingly, even though Williams theoretically may have been free to work as he wished, the economic reality may well have been quite different.
A cross motion for summary judgment has not been filed seeking a ruling that Williams was an employee of Burns, and we stop short of such a holding today. Instead, we find that the facts before us for our de novo review plainly show that a genuine issue of material fact exists with respect to whether Williams was an employee of Burns.
We also observe that Singleton has asserted on appeal that the work done by Burns to alleviate erosion into Singleton's pond was not done correctly and caused additional problems to Singleton's property. Although these allegations are not clearly spelled out in the plaintiff's petition, there was an indication in Williams' deposition that such allegations had been made by Singleton, and a genuine issue of material fact also may exist in this regard, aside from the question of the employment relationship between Williams and Burns.

CONCLUSION
For the reasons set forth above, the trial court's judgment is hereby reversed. Costs are assessed to Burns Forest Products, Inc. The case is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.

APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GASKINS, CARAWAY, and MOORE, JJ.
Rehearing denied.