862 So.2d 1186 (2003)
Dorline McADAMS, et al, Plaintiffs-Appellants,
v.
WILLIS KNIGHTON MEDICAL CENTER, Defendant-Appellee.
No. 38,181-CA.
Court of Appeal of Louisiana, Second Circuit.
December 19, 2003.
*1187 Rivers, Beck, Dalrymple & Ledet by Joseph T. Dalrymple, Alexandria, for Appellant.
Watson, Blanche, Wilson & Posner by Chris J. LeBlanc, Baton Rouge, for Appellee.
Before BROWN, PEATROSS and LOLLEY, JJ.
LOLLEY, J.
Dorline and Dewey McAdams appeal a summary judgment in favor of Willis Knighton Medical Center ("Willis Knighton"). For the following reasons, we reverse the trial court's judgment.

FACTS
In September 2001, Dorline McAdams and her husband, Dewey McAdams, went to Willis Knighton Medical Center in Shreveport to visit Mr. McAdams' sister. After parking in the hospital lot, they walked toward the hospital entrance across a paved concrete surface. Before reaching the entrance, Mrs. McAdams allegedly "stumped her toe" at an expansion joint and fell forward onto her face, sustaining injuries.
The McAdams filed suit against Willis Knighton asserting that the concrete surface was uneven, with one section of concrete over an inch higher in elevation from the remainder of the concrete surface. The McAdams alleged that Willis Knighton was at fault because its premises contained a hidden defect in the form of an abrupt change in elevation of the concrete surface of more than one inch. Pre-trial discovery ensued, including the taking of the depositions of Mr. and Mrs. McAdams, as well as the taking of the deposition of James Stephens ("Stephens"), an investigator hired by the McAdams to photograph the area where Mrs. McAdams' fall occurred.
Willis Knighton filed a motion for summary judgment to which it attached the previously-noted depositions, as well as the affidavit of Jerry Ivey ("Ivey"), a hospital engineer for Willis Knighton, and the affidavit of Mike Sullivan ("Sullivan"), a supervisor in the security department of Willis Knighton. Based on the pleadings, depositions, and affidavits, Willis Knighton asserted there was no genuine issue of material fact because the McAdams could not prove that the specific area in the parking lot where Mrs. McAdams fell was *1188 unreasonably dangerous. Willis Knighton pointed out that Mrs. McAdams did not know the exact location in the parking lot where she stumped her toe, and did not personally know the elevation in that area. Likewise, Willis Knighton asserted that Mr. McAdams could not point to the exact spot where his wife fell and that Stephens, the investigator who photographed the area, did not see the fall and also had no independent knowledge of the location of the fall. Furthermore, Willis Knighton asserted that, as a matter of law, there was no defect in the parking lot that created an unreasonably dangerous condition based upon the conditions described by the McAdams and Stephens.
Ivey's affidavit indicated that, based upon his education and experience, he was able to determine if a parking lot composed of concrete blocks and expansion joints was defective, that he had measured the height variance at the joint in the location Mrs. McAdams claims she fell and that in his opinion as an industrial engineer, the height variance found of one-half inch to one inch at most did not create an unreasonable risk of harm. Ivey indicated that he was familiar with the area where the fall took place, and no reports of any problems in that area were reported to him either prior to or after Mrs. McAdams' fall. He also stated there are almost always some variances in height from the concrete at an expansion joint, even when the concrete is newly poured, that such variances are easily seen, and that the cost of repairing every such deviation would be prohibitive. Although Ivey disagreed with Stephens' report that any height variances of one and one-eighth inch to one and three-eights inch existed at the location, he opined that such a variance did not create an unreasonable risk of harm.
The affidavit of Sullivan indicated that he had personal knowledge of complaints and accidents in the parking lot, that he was personally familiar with the area where Mrs. McAdams fell, and that he was aware of no other complaints or falls in that area either prior to or after her fall.
In response to Willis Knighton's motion for summary judgment, the McAdams essentially argued that the issue of whether a defect constitutes an unreasonable risk of harm is a factual determination for the trier of fact and involves many considerations that should be resolved on a case-by-case basis. The McAdams also urged the court to weigh the testimony of Willis Knighton's engineer and their investigator in order to determine who was more accurate and credible "on the disparity and height of the elevation." Furthermore, noting that Mr. McAdams' deposition stated that Willis Knighton's security personnel had indicated the occurrence of prior falls, the McAdams asked the court to let Sullivan testify subject to cross-examination on the adequacy of record-keeping, and method of data collection.
The trial court granted Willis Knighton's Motion for Summary Judgment and this appeal by the McAdams ensued.

DISCUSSION
Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). Under the procedures of La. C.C.P. art. 966(B), summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. Appellate courts *1189 review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Singleton v. Booker, 37,198 (La.App.2d Cir.05/14/03), 847 So.2d 107, writ denied, 2003-2030 (La.11/07/03), 857 So.2d 495.
Although the initial burden in summary judgment remains with the mover to show that no genuine issue of material fact exists, once the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Estate of Levitz v. Broadway, 37,246 (La. App.2d Cir.05/14/03), 847 So.2d 170. Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor. Willis v. Medders, 2000-2507 (La.12/08/00), 775 So.2d 1049. The court must draw those inferences from undisputed facts that are most favorable to the party opposing the motion for summary judgment. Independent Fire Insurance Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.02/29/00), 755 So.2d 226; Estate of Levitz, supra.
The pertinent provisions of La. C.C. art. 2317.1 state:
The owner or custodian of a thing is answerable for damages occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
Prior to the Louisiana Legislature's adoption of La. C.C. art. 2317.1, cases such as the one at bar were analyzed under the provisions of La. C.C. art. 2317 which states, in pertinent part: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody ..." In Boyle v. Board of Sup'rs, Louisiana State University, 96-1158 (La.01/14/97), 685 So.2d 1080, a case whose operative facts arose prior to the adoption of La. C.C. art. 2317.1, the Louisiana Supreme Court noted that the strict liability imposed by Article 2317 required the plaintiff to prove that the vice or defect of the thing was a condition that posed an unreasonable risk of harm to others; the finding of the existence of a defect alone was not a sufficient analysis to establish liability.
In order to determine whether a defect created an unreasonable risk of harm, the supreme court in Boyle applied a risk-utility balancing test which weighed factors such as the gravity and risk of harm, individual and societal rights and obligations, and the social utility involved. As a result of employing the balancing test, the court concluded that a sidewalk upon which the plaintiff was walking was not defective despite a depression that the trial court found to be anywhere from one-half inch to one inch or more. In Boyle, the court found the risk of injury apparently was not great because the evidence showed that the plaintiff was the only person ever reported to have fallen at that location despite it being a high traffic area. On the other hand, the court found that the utility of the sidewalk, located on a university campus, was clear and carried great weight in the equation. Furthermore, the evidence showed that it was unreasonable to expect the university to police and keep in perfect repair the more than 22 miles of sidewalk on the campus.
*1190 The supreme court also applied an unreasonable risk of harm analysis in the case of Reed v. Wal-Mart Stores, Inc., 97-1174 (La.03/04/98), 708 So.2d 362. Reed concerned whether a parking lot was defective, and in this regard the court noted:
It is common for the surfaces of streets, sidewalks, and parking lots to be irregular. It is not the duty of the party having garde of the same to eliminate all variations in elevations existing along the countless cracks, seams, joints, and curves. These surfaces are not required to be smooth and lacking in deviations, and indeed, such a requirement would be impossible to meet. Rather, a party may only be held liable for those defects which present an unreasonable risk of harm.
At the same time, the supreme court stated that, "Because of the plethora of factual questions and other considerations involved, the issue [of whether an unreasonable risk of harm exists] necessarily must be resolved on a case-by-case basis."
In a similar vein, we stated in Johnson v. Brookshire Grocery Co., 32,770 (La. App.2d Cir.03/01/00), 754 So.2d 346, writ denied, XXXX-XXXX (La.05/26/00), 762 So.2d 1107:
The determination that a defect presents an unreasonable risk of harm predominantly encompasses an abundance of factual findings, which differ greatly from case to case. The unreasonable risk of harm criterion entails a myriad of considerations and cannot be applied mechanically.
Although the adoption of La. C.C. art. 2317.1 in 1996 required a plaintiff to prove that an owner of a thing either knew or, in the exercise of reasonable care, should have known of a defect which caused damage, and additionally that the damage could have been prevented by the exercise of reasonable care that the owner failed to reasonably exercise, we note that an unreasonable risk of harm under the jurisprudence preceding adoption of Article 2317.1 is precisely the risk that an owner, in the exercise of reasonable care (an exercise based on a risk-utility balancing process), would take steps to identify and eliminate.
Applying these summary judgment and liability principles in the instant case, we must conclude that the trial court erred in granting summary judgment.
On appeal, Willis Knighton argues in favor of affirming the trial court's judgment based on several grounds relating to the McAdams' burden of proof. According to Willis Knighton, the McAdams had to prove that Willis Knighton had custody of the thing that caused the injury, that it contained a defect (a condition creating an unreasonable risk of harm), and that the defect caused Mrs. McAdams' injury. Furthermore, the McAdams had to prove that Willis Knighton knew or should have known of the vice or defect. However, Willis Knighton asserts that the McAdams offered no evidence to prove any of these elements so that multiple reasons existed to grant summary judgment. We disagree.
First, Willis Knighton's Motion for Summary Judgment did not call into question whether the area where the accident occurred was under the ownership or custody of Willis Knighton. Instead, all indications are that the accident occurred on Willis Knighton's property near the main entrance to the hospital. Furthermore, while Willis Knighton did assert in its motion that the McAdams could not prove the specific area where Mrs. McAdams fell, we read Mr. McAdams' deposition as indicating that his wife tripped along a particular segment of an expansion joint, and that, while he did not know the exact spot, he *1191 did identify within a few feet the spot at which his wife's foot hit the elevated pavement. Pictures of this area indicate that the pavement was elevated all along the expansion joint in the area, and that while the exact height of the elevation may have varied slightly from foot to foot, the difference in elevation was approximately one inch (or a little more) along the expansion joint. Thus, the fact that the McAdams may not know the exact spot where Mrs. McAdams tripped hardly defeats their cause of action. Instead, the real concerns here are whether the defect presented an unreasonable risk of harm and whether Willis Knighton knew or, in the exercise of reasonable care, should have known of the defect.
As previously noted, Ivey's affidavit contains his opinion as an industrial engineer that the height variance at the expansion joint does not create an unreasonable risk of harm. However, his opinion as an engineer does not, standing alone, require a trier of fact to reach the same result under a risk-utility balancing test. The appellants plainly showed the existence of a defect at the location where Mrs. McAdams tripped, and it is Ivey's factual statements and findings that are important here as variables to account for in the balancing test. Ivey notes in his affidavit that no reports of any problems in the area were reported to him either prior to or after Mrs. McAdams' fall. Likewise, the affidavit of Sullivan indicates that he was not aware of other complaints or falls in the area. This evidence tends to indicate that the risk of harm at that location from the defect was not great. This is also supported by the fact that the area in question was an open, well-lighted area, unobscured from the view of persons walking there.
Ivey's affidavit also points out that expansion joints are beneficial because they allow the avoidance of irregular cracks that could result from a single block of concrete, and that there are almost always variances in height at such joints. Furthermore, considering the extensive parking area in the Willis Knighton Health System that uses concrete blocks with expansion joints, repair of every deviation at such joints would be cost prohibitive, require frequent replacement of concrete, and would not guarantee that no variance at the joints would occur. This testimony was aimed at showing the social utility of having expansion joints and the prohibitive cost of repair.
However, even when we fully consider this evidence as part of the risk-utility balancing test, in order to affirm a summary judgment we would have to conclude that reasonable fact finders could not differ on the outcome of risk-utility balancing tests applied in this case. We cannot reach this conclusion because there are other factors involved in the balancing test that weigh in the opposite direction. First, with respect to the gravity of harm, it is obvious that Mrs. McAdams' injuries as asserted in the petition and supported by the deposition testimony, were severe. Her face-first fall onto the hard concrete surface allegedly resulted in a broken nose, broken teeth, a missing crown on a tooth, and bruising to her right wrist. Injuries such as these are easy to envision as the result of such a trip-and-fall accident. Additionally, we note that the main entrance to a hospital is an area that naturally will tend to have a higher percentage of pedestrians who are in less than good health, who may be less sure-footed, and who may be at significantly greater risk of falling and sustaining serious injury. This observation goes to both the likelihood of harm and the gravity of harm.
Finally, we observe that regardless of the massive square footage of concrete *1192 found in the Willis Knighton Health System, we are looking at the main entrance to one of the four hospitals in the system. Such an area obviously is one over which an owner or custodian would want to exercise particularly good care, not only because it is a high traffic area, but also because of the individuals likely to use the area. Additionally, the pictures of the hospital entrance indicate that a curbed concrete island existed near the entrance and that the island was quite a few inches higher than the surrounding paved surfaces. It appears that individuals walking from at least some portions of the parking lot, if they did not step up, onto, and over the island, would walk around the island in the direction of the main entrance and would then traverse the exact area where Mrs. McAdams allegedly tripped and fell. Put another way, the island effectively tended to direct pedestrians toward the area where the uneven paving condition existed, and that condition was directly across from the main entrance to the hospital. This observation goes to the likelihood of harm and the gravity of harm.
All things considered, under our de novo review of the trial court's grant of summary judgment, we find that a genuine issue of material fact still exists with respect to whether or not the defect presented an unreasonable risk of harm. In so concluding, we are quite mindful of the supreme court's observations in Reed, supra, that it is common for the surfaces of streets, sidewalks, and parking lots to be irregular, and that those having garde of them have no duty to eliminate all variations in elevation. However, a party may be held liable for those defects which present an unreasonable risk of harm, and we are also mindful of the supreme court's statement in Reed, supra, that because of the plethora of factual questions and other considerations involved, the issue of whether an unreasonable risk of harm exists must be resolved on a case-by-case basis. Thus, our conclusion in the instant case is based on the unique facts thus far presented, chief among them being that this case comes before us on a motion for summary judgment, not after a trial on the merits. The question is not whether Willis Knighton is likely to prevail on the factual issues at trial, but simply whether there are genuine issues of material fact for trial.
Finally, while the deposition evidence certainly tends to indicate that Mrs. McAdams tripped on the defect, there is still the question of whether Willis Knighton either knew, or in the exercise of reasonable care, should have known of the defect. While there is no evidence before us of Willis Knighton's actual knowledge, the inquiry into whether Willis Knighton, in the exercise of reasonable care, should have known of the defect is largely answered by the preceding discussion concerning the risk-utility balancing test. Because the defect existed near the main entrance of the hospital, because the parking lot was directly across from the main entrance so that patients and visitors going between the hospital and the parking lot were likely to traverse the area where the defect existed, especially in light of the elevated, curbed concrete island near the entrance, and because of the impaired health likely present in a significant number of those traversing the area, we cannot conclude as a matter of law that, in the exercise of reasonable care, Willis Knighton should not have known of the defect.

CONCLUSION
For the reasons set forth above, the judgment of the trial court is reversed, and this case is hereby remanded to the trial court for further proceedings. Costs are *1193 assessed to Willis Knighton Medical Center.
REVERSED AND REMANDED.