889 So.2d 1173 (2004)
Johnnie R. ELMORE a/k/a Johnny R. Elmore and Patricia Elmore, Plaintiff-Appellant,
v.
Steven Paul KELLY, Sr., Safeway Insurance Company, Houston Trucking and American Brokers Insurance Company, Defendant-Appellee.
No. 39,080-CA.
Court of Appeal of Louisiana, Second Circuit.
December 15, 2004.
*1174 James E. Ross, Jr., Monroe, for Appellant.
Tracy L. Oakley, Ruston, for Appellee, Steven Paul Kelly, Sr. and Safeway Insurance Company.
Brian D. Smith, Shreveport, Matthew J. Ungarino, Metairie, for Appellee, Houston Hines.
Susan C. Severance, New Orleans, for Appellee, American Insurance Brokers, Inc.
Robert Kennedy, Jr., Shreveport, for Appellee, Scottsdale Insurance Company.
Before WILLIAMS, CARAWAY and LOLLEY, JJ.
WILLIAMS, J.
The plaintiffs, Johnnie R. Elmore a/k/a Johnny R. Elmore ("Elmore") and Patricia Elmore, appeal a judgment in favor of one of the defendants, American Insurance Brokers, Inc. ("American").[1] The trial court granted American's exception of no right of action and its motion for summary judgment. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
On May 27, 2002, Elmore was struck by a 1994 Nissan driven by Steven Paul Kelly, Jr. ("Kelly"), which resulted in the amputation of Elmore's right leg. At trial, Elmore testified that he was driving a tractor-trailer rig owned by Houston Hines d/b/a Houston Trucking ("Houston Trucking"). Elmore was hauling a load of scrap metal from West Monroe, Louisiana to Jackson, Mississippi. He testified that while he was driving eastbound on Interstate 20 in Madison Parish, Louisiana, one of the tractor's left tires blew out. According to Elmore, he then moved the tractor-trailer rig to the shoulder of the interstate, turned on his emergency flashers and exited the tractor. Elmore testified that he was checking the tire, when he noticed that the trailer had disconnected from the tractor. He stated that he entered the tractor to re-align it with the trailer so that the trailer's locking pin would lock into the tractor's fifth wheel. Elmore testified that the last thing he remembered about the accident was going outside to check on the re-alignment between the tractor and trailer.
Trooper Michael Evans testified that Kelly was momentarily distracted when he drove the car off of the highway.[2] According to Trooper Evans, the car collided with the rear of the trailer and, because of the impact, the car began to collapse and rotate clockwise along the side of the eighteen-wheeler. Trooper Evans determined that the accident was caused by the car *1175 striking the eighteen-wheeler and concluded that the tractor and trailer were legally parked on the shoulder of the interstate. He testified that at the time of the accident, the weather was clear with a hot or warm temperature and the road surface was dry. He further testified that there was nothing obstructing Kelly's view of the eighteen-wheeler and there was no evidence that Kelly had attempted to prevent the accident. Trooper Evans testified that it appeared as if the Nissan "veered off onto the shoulder and was veering back somewhere toward the traveled portion of the roadway when it impacted" with the eighteen-wheeler.
Robert George Jefferson, III and George Canales, Jr. were the medical personnel at the scene of the accident. Jefferson testified that Elmore's right leg was almost completely amputated at the mid-femur. Canales testified that it appeared as if the Nissan had pinned Elmore's leg to one of the tire wells of the eighteen-wheeler because of the blood, fatty tissue and bone fragments found inside the tire well.[3]
The plaintiffs filed suit against Steven Paul Kelly, Sr. ("Kelly, Sr."), (for his minor son's negligence), Safeway Insurance Company ("Safeway"), the 1994 Nissan insurer), Houston Trucking and American (Houston Trucking's insurance agency). On October 10, 2002, the plaintiffs filed a "First Amended and Supplemental Petition for Damages" against Kelly, Sr., Safeway, Houston Trucking (the owner of the tractor-trailer rig) and Scottsdale Insurance Company ("Scottsdale"), (Houston Trucking's insurer). On April 7, 2003, the plaintiffs filed a "Second Amended and Supplemental Petition for Damages" against Kelly, Sr., Safeway, Houston Trucking, Scottsdale and American.[4]
In their amended petition, the plaintiffs alleged that the fault and negligence of Kelly and Houston Trucking were the "legal cause of the accident and all resulting injuries and damages." According to the plaintiffs, but for Houston Trucking's removal of the tractor's rear fenders and/or modification or adjustment to the fifth wheel, the trailer would not have disconnected from the tractor and Elmore would not have been struck by the Nissan while attempting to attach the tractor to the trailer. The plaintiffs also alleged that in accordance with 49 C.F.R. § 387.9 of the Federal Motor Carrier Safety Regulations, American and Scottsdale were aware that they had a duty to provide Houston Trucking with a minimum of $750,000 in insurance coverage. The plaintiffs alleged that because American and Scottsdale failed to provide Houston Trucking with the requisite $750,000 minimum insurance coverage, they were liable to the plaintiffs for damages up to $750,000.
American filed an exception of no right of action and a motion for summary judgment, which were granted by the trial court.[5] With regard to the exception of no right of action, the trial court concluded that the plaintiffs, as third parties, did not have a right of action against American, Houston Trucking's insurance agency, for failing to procure the correct amount of insurance coverage. In granting the motion for summary judgment, the trial court also concluded that American did not fail to advise Houston Trucking of the proper minimum insurance coverage. Plaintiffs appeal the judgment.

*1176 DISCUSSION

Exception of No Right of Action
The plaintiffs contend the trial court erred in granting American's exception of no right of action. By this assignment of error, they argue that the record contained evidence that American was required to provide a minimum of $750,000 in insurance in order to protect the general public from the risk of harm caused by Houston Trucking.
Generally, an action can only be brought by a person having a real and actual interest which he asserts. The exception of no right of action is designed to test whether the plaintiff has a real and actual interest in the action. The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. The exception assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation. Industrial Companies, Inc. v. Durbin, XXXX-XXXX (La.1/28/03), 837 So.2d 1207; Jackson v. USAgencies Insurance Company, 37,317 (La.App.2d Cir.6/25/03), 850 So.2d 899.
In the instant case, the plaintiffs are third party claimants who have filed suit against American (an insurance agency) for failing to procure for Houston Trucking (an alleged tortfeasor) insurance coverage in the amount of $750,000, which coverage the plaintiffs argue is mandated by the Federal Motor Carrier Safety Regulations. This Court, along with the First and Third Circuits, has held that the tortfeasor's insurance agent owes no duty to the tort victim to secure insurance coverage. The agent's duty to use due care in procuring proper insurance coverage for the insured tortfeasor arises from the agreement between them and does not encompass the risk of harm to the third party victim who seeks to proceed directly against the agent who failed in his duty to secure proper coverage for the insured. Moreover, this court does not recognize a third party victim's right of action against a tortfeasor's insurance agent for failing to procure the proper insurance coverage. Huffman v. Goodman, 33,647 (La.App.2d Cir.8/23/00), 766 So.2d 651; Campbell v. Continental-Emsco Company, 445 So.2d 70 (La.App. 2d Cir.1984), writ denied, 446 So.2d 1223 (La.1984); contra Sturcke v. Clark, 261 So.2d 717 (La.App. 4th Cir.1971).
After reviewing this record and the controlling law, we find that the trial court correctly applied Huffman v. Goodman, supra, and Campbell v. Continental-Emsco Company, supra, in finding that the plaintiffs, as third party claimants, did not have a right of action against American for failing to procure the proper insurance coverage for Houston Trucking. Thus, we conclude that the trial court was correct in granting American's exception of no right of action. Consequently, this assignment of error lacks merit.

Motion for Summary Judgment
The plaintiffs contend the trial court erred in granting American's motion for summary judgment. They argue that American failed to establish that there was no genuine issue of material fact.
At any time, the defendant in the principal action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. LSA-C.C.P. art. 966(A). Summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled *1177 to judgment as a matter of law. LSA-C.C.P. art. 966(B). The movant has the burden of proving the lack of a genuine issue of material fact. If the movant will not bear the burden of proof at trial on the matter presented in the motion for summary judgment, the movant must point out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. LSA-C.C.P. art. 966(C). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477.
49 C.F.R. § 387.9 requires a minimum of $750,000 in insurance coverage for "for hire" carriage (in interstate or foreign commerce, with a gross vehicle weight rating of 10,001 or more pounds) of nonhazardous property. "For hire" carriage is defined as the business of transporting, for compensation, the goods or property of another. 49 C.F.R. § 387.5; See Church Point Wholesale Beverage Company v. United States, 200 F.Supp. 508 (W.D.La.1961). Under LSA-R.S. 32:900(M)(1)(b), a minimum of $300,000 in insurance coverage is required for a vehicle with a gross vehicular weight of more than 50,000 pounds.
In their second amended petition, the plaintiffs alleged that American took an insurance application from Houston Trucking and submitted it to Scottsdale. According to the plaintiffs, Houston Trucking informed Scottsdale that it wanted insurance coverage for two freightliner tractors with carrying capacity up to 80,000 pounds and two trailers. The plaintiffs further alleged that American and Scottsdale knew that 49 C.F.R. § 387.9 of the Federal Motor Carrier Safety Regulations required the insurer to provide Houston Trucking with a minimum of $750,000 in insurance coverage, but they failed to procure $750,000 insurance coverage for Houston Trucking. Thus, the plaintiffs argued that American and Scottsdale should be held liable up to the $750,000 minimum insurance coverage amount. In their memorandum in opposition to American's motion for summary judgment, the plaintiffs argued that 49 C.F.R. § 387.9 preempted LSA-R.S. 32:900(M)(1)(b) because Houston Trucking's vehicle was involved in interstate commerce. The plaintiffs submitted excerpts from the depositions of the driver, Elmore, and the owner, Hines, to establish that Houston Trucking's vehicle was involved in interstate commerce.
In its motion for summary judgment and its memorandum in support thereof, American argued that Houston Trucking carried the proper insurance coverage in the amount of $300,000 as required by LSA-R.S. 32:900(M)(1)(b) and that 49 C.F.R. § 387.9 did not apply because Houston Trucking's vehicle was not "for hire." In response to plaintiffs' opposition, American further argued that 49 C.F.R. § 387.9 did not apply even if Houston Trucking's vehicle was used in interstate commerce. In support of its argument that Houston Trucking's vehicle was not "for hire," American submitted a deposition excerpt in which Hines testified that he was hauling for himself.[6]
*1178 The trial court found as a matter of law that Houston Trucking was required to have $750,000 insurance coverage only if its tractor and trailer were "for hire." Since Hines testified that he hauled for himself, the trial court found that 49 C.F.R. § 387.9 was not applicable and that Houston Trucking was not required to carry $750,000 in insurance coverage. Moreover, the trial court found that LSA-R.S. 32:900(M)(1)(b) was not limited to intrastate commerce and that there was no basis for federal preemption of the Louisiana statute.
After reviewing the pleadings and attached deposition excerpts, we find that American has met its burden of proof by establishing the absence of factual support for one or more elements essential to the plaintiffs' claim. Specifically, American has shown that Houston Trucking's vehicle was not "for hire" because Hines was hauling for himself and not for compensation from another person or business entity. Furthermore, the plaintiffs failed to produce factual support sufficient to establish at trial that they could satisfy their evidentiary burden of proving that Houston Trucking's vehicle was "for hire." Thus, 49 C.F.R. § 387.9 was inapplicable and Houston Trucking was not required to obtain $750,000 in insurance coverage. Therefore, there was no genuine issue of material fact, and American was entitled to summary judgment as a matter of law. The trial court correctly granted summary judgment in favor of American. This assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, we affirm the trial court's sustention of the exception of no right of action and the summary judgment in favor of American Insurance Brokers, Inc. Costs of this appeal are assessed to the plaintiffs, Johnnie R. Elmore a/k/a Johnny R. Elmore and Patricia Elmore.
AFFIRMED.
NOTES
[1] In their pleadings, the plaintiffs refer to this company as American Brokers Insurance Company.
[2] According to the appellants, Kelly was cited for careless operation.
[3] In their brief, appellants allege that Elmore's leg was ultimately amputated at the hospital and a front passenger in the Nissan was killed.
[4] Although there are references to a pleading entitled a "Third Amended and Supplemental Petition for Damages," this document is not in the record.
[5] Houston Trucking's motion for summary judgment was denied.
[6] American also produced an "affidavit" (with attachments) from Sue Miller, the President of American, to support its arguments. However, the "affidavit" did not have the requisite signatures from Miller, the notary public nor the witnesses and did not have the complete filing information.