# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 24-533

**PATRICK COLLINS, DAWN COLLINS AND
SOUTHSHORE BUILDING SERVICES, INC.**

**VERSUS**

**CONTINUUM RESTORATIONS SERVICES, L.L.C. AND
GUIDEONE NATIONAL INSURANCE COMPANY, ET AL**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. C-202010405F
HONORABLE DAVID M. SMITH, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**GARY J. ORTEGO
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Van H. Kyzar, Candyce G. Perret, and Gary J. Ortego, Judges.

**AFFIRMED.**

**Edward C. Vocke, IV**
**3000 18th Street**
**Metairie, LA 70002**
**(504) 837-1304**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Southshore Building Services, Inc.**
**Patrick Collins**
**Dawn Collins**

**Richard J. Wolff**
**3801 Canal Street, Suite 202**
**New Orleans, LA 70119**
**(504) 421-3277**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Southshore Building Services, Inc.**
**Patrick Collins**
**Dawn Collins**

**Linda K. Ewbank**
**Hammond, Sills, Adkins, Guice, Noah & Perkins, LLP**
**1500 N 19th Street, Suite 301**
**Monroe, LA 71201**
**(318) 324-0101**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Acadia Parish School Board**

**Shonda D. Legrande**
**Richard R. Montgomery**
**P. O. Box 14503**
**Des Moines, IA 50306**
**(337) 417-0786**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**Continuum Restorations Services, L.L.C.**
**Guideone National Insurance Company**

**Todd Michael Ammons**
**Stockwell, Sievert**
**P. O. Box 2900**
**Lake Charles, LA 70602**
**(337) 436-9491**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**H & H Chemical Co.**

**ORTEGO, Judge.**

Plaintiffs/Appellants appeal the trial court's judgment granting Defendants/ Appellees' motions for summary judgment finding injured plaintiff was a subcontractor on a particular work project, thus relegating Plaintiff's injury claims to workers' compensation. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

Appellants, Patrick Collins ("Mr. Collins"), Dawn Collins and Southshore Building Services, Inc. ("Southshore") (collectively "Appellants"), filed a petition for damages in this matter on June 4, 2020, for injuries and damages they claim to have suffered due to the negligence of three defendants, two of which are relevant to this appeal: the Acadia Parish School Board ("Acadia") and Continuum Restoration Services, LLC ("Continuum"). Specifically, Appellants allege that on June 5, 2019, Mr. Collins slipped and fell in a chemical solution on a job site at Crowley High School ("CHS"). This accident occurred on Mr. Collins' third day of work stripping, waxing, and sealing the floors of CHS's common areas.

The facts show that Mr. Collins owns Southshore, and that his son, Andrew Collins, was approached by Continuum in regard to a job striping and waxing the floors of CHS. In response, Southshore submitted three bid proposals to Continuum for its work on the project as a contractor. Continuum did not sign these proposals but instead asked Mr. Collins to attend a meeting with Acadia, the political subdivision that manages the high school. At the meeting, Mr. Collins contends he negotiated directly with Andrew Wynn, an Acadia employee, who agreed that Southshore would provide stripping and waxing services for 50% of the school. Acadia then asked Continuum to complete waxing and stripping services on the other half of the school. However, Mr. Collins acknowledges that he never discussed

payment for the floor-stripping work with any representative of Acadia. Again, and notably, there were no written contracts executed between any of these parties.

On June 5, 2019, Mr. Collins slipped on a portion of the floor that was covered in hazardous chemicals and received such severe burns that he required debriding surgery, where skin was removed from his leg and placed over his chemically burned skin. Mr. Collins claims that the chemicals on the floor that caused his injuries were improperly mixed and poured by Continuum and that the chemicals themselves had been supplied by Acadia. Mr. Collins also claimeed that he warned Acadia that the chemicals were particularly hazardous, but the warning was ignored. Mr. Collins also stated that Continuum had poured the improperly-mixed and dangerous chemicals on the portion of the floor that had been allocated to Southshore to complete. While Mr. Collins was in the hospital, the secretary at Southshore submitted work invoices to Continuum. Mr. Collins contends that the secretary was not aware of the meeting between Mr. Collins and Mr. Wynn; otherwise, he contends, the invoices would have been sent to Acadia.

On June 22, 2019, during Mr. Collin's recovery and after his company had completed similar work on several other schools, Continuum requested that he sign a lien waiver foregoing any lien that Southshore would have against Continuum for the work performed, which was done in exchange for the final payment to Southshore. The text of the lien waiver signed by Mr. Collins is as follows (emphasis added):

> The undersigned hereby certifies that he has examined and is authorized to execute this affidavit as the owner, and/or officer, as the case may be, **of the below named vendor, lessor, laborer, supplier, consultant; subcontractor and/or contractor (hereinafter collectively referred to as The Contractor[**])] of all labor and materials or other movables, and/or improvements in, on, over, under, to, for, or at the project listed hereinbelow.

In consideration for the payment to Contractor of the claim, the receipt of which is hereby acknowledged, Contractor waives any and all claims to liens which the Contractor may have on or affecting the project as a result of the claim, or for performing said labor and/or furnishing such materials or services. The Contractor further certifies that the last date on which the Contractor furnished any labor, materials or services included by the claim is shown below and that the Contractor also releases the project from any and every lien, charge or claim the Contractor may have on said date for work done, materials furnished, or upon any other ground whatsoever not covered by the claim growing out of or in any way connected with any construction on or at the project.

The Contractor further certifies and warrants that all labor and/or materials for the project have been paid in full for all labor and materials supplied to, for, and in way connected with any construction or repair of, or to, any building or portion of the project.

The Contractor: Southshore Building Services, Inc.

. . . .

Description of the project: Strip, wax, and seal floors at the following schools. . .

As noted above, on June 4, 2020, Appellants filed a petition for damages. On May 22, 2023, Appellees filed identical motions for summary judgment seeking dismissal of Appellants' petition, pursuant to La.R.S. 23:1032, Louisiana's Statutory Employer provision. Acadia and Continuum specifically alleged they were the statutory employers of Mr. Collins at the time of his accident and, therefore, are statutorily immune from all of Appellants' claims arising from this matter, as Appellants' claims fall within the exclusive remedies provided by workers' compensation law.

As part of their motions for summary judgment, Appellees produced three affiants, namely Mr. Wynn, Jeff Fields (a Continuum employee), and Hans Hergens (a Continuum employee), to attest that a subcontractor relationship existed between Continuum and Southshore regarding the floor-stripping project ("the project") at the Acadia schools. The affiants testified that *only* Continuum was paid directly by

Acadia; that Continuum was paid by the hours worked, whereas Southshore was paid by the square foot completed; that Southshore sought payment *only* from Continuum; and that Mr. Collins never discussed payment of the work with Acadia. In turn, Appellants submitted an affidavit by Mr. Collins. They also included bank statements showing that Southshore paid for its employees' hotel rooms, contradicting the affidavit of Mr. Hergens, who stated that Continuum paid for the hotel rooms for the Southshore employees, to demonstrate that Continuum had no control over Mr. Collins in the capacity of a statutory employer.

After briefing and hearing on Appellees' motions, judgment was rendered by the trial court in favor of the Appellees on November 17, 2023.[1] Appellants now appeal the trial court's decision to grant Appellees' motions for summary judgment.

## ASSIGNMENTS OF ERROR

1. The district court abused its discretion by impermissibly weighing the evidence as well as discounting Mr. Collins' [sic] evidence that contradicted appellees' material facts.

2. The district court abused its discretion by disregarding [La.Civ.Code.] art. 1848 and allowing Acadia/Continuum to attack their own document.

3. The district court legally erred by making a credibility decision, particularly relating to Continuum and Acadia's affiant.

## STANDARD OF REVIEW

It is well settled that summary judgment shall be granted if "the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3); *Van v. Ferrell*, 45,977 (La.App. 2 Cir. 3/2/11), 58 So.3d 522.

---

[1] Appellants subsequently filed a motion for new trial, claiming the trial court ruled contrary to the evidence when granting the summary judgments and requested the court to set aside its judgment and grant a new trial on the matter, which was heard by the court on January 29, 2024. After reviewing the briefs on the motion and oral arguments, the court denied Appellants' motion for new trial on March 26, 2024.

4

In reviewing a trial court's decision on a motion for summary judgment, this court applies the de novo standard of review using the same criteria applied by the trial court to determine whether summary judgment is appropriate. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880.

## DISCUSSION AND ANALYSIS ON THE MERITS

*Trial Court's Judgment:*

The trial court granted Appellees' motions for summary judgment, issuing reasons from the bench. The trial court in particular noted that the lien waiver signed by Southshore did not include language sufficiently clear to designate Southshore as a contractor, instead of a subcontractor, stating:

> All right. I've heard plenty and I've read the arguments contained in the briefs and everything. **And while I did want to entertain some argument on the lien waiver**, because when I was reading it I had the same thoughts, is that I don't find that the lien waiver is indicative of Southshore being a contractor. **It basically encompasses everybody, from sellers, vendors, contractors, subcontractors, everybody who looked at the property, walked on the property**, blah, blah, blah, did anything on the property at all. So I don't find that indicative of - - and without that being said, being no other evidence, I don't find that there's any other general - - genuine issues, so I'll grant Continuum's and the school board's motions.
> (Emphasis added.)

*Appellants' Arguments:*

Appellants argue that the judgments of the trial court should be reversed for three reasons.

First, they argue the trial court abused its discretion by weighing the evidence submitted by the Appellees against Mr. Collins' sworn deposition and written evidence. Appellants note it was uncontroverted that Continuum refused to sign the bid proposals submitted by Mr. Collins. If these bid proposals to Continuum had been accepted in writing, Mr. Collins's company *would* have been a subcontractor whose sole remedy would be the worker's compensation. However, Continuum did

5

not sign any of the proposals and instead, brought Mr. Collins to the June 3 meeting, where Appellants contend that Acadia agreed to alter Acadia and Continuum's original contract, and the fact that the original contract was between Acadia and Continuum did not preclude a second contract between Acadia and Southshore. Mr. Collins argues he contracted directly with Acadia during this June 3rd meeting, and it was Acadia and not Continuum who awarded him 50% of the project at CHS. Appellants cite *Circle, LLC v. M&L Engine, L.L.C.*, 23-63, (La. 3/28/23), 358 So.3d 40 (per curiam), in support of the proposition that a subsequent oral amendment of a contract may render a matter unfit for summary judgment, as it may present issues of material fact that must be decided by the factfinder at trial. Therefore, Appellants argue that the lack of written contracts and the dispute as to who contracted with whom requires a factfinder to make a credibility determination. Specifically, there is a dispute here as to whether Acadia contracted with Southshore directly for 50% of the project at CHS. Appellants contend the trial court clearly ruled that Mr. Collins' sworn testimony, unsigned proposed contracts, and production of the lien waiver could not overcome evidence submitted by Acadia and Continuum, which is an impermissible weighing of the evidence.

Second, Appellants argue that the lien waiver mentioned above was drafted by either Acadia or Continuum and states in bold that Mr. Collins's company is "The Contractor." This designation alone, on a notarized document, Appellants argue, undermines Appellees' argument that Mr. Collins is a subcontractor. Furthermore, Appellants contend that the trial court clearly disregarded Louisiana law by allowing Appellees to collaterally attack their own ambiguously written document, here the lien waiver, in violation of La.Civ.Code art. 1848, which reads as follows:

> Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted

6

to prove such circumstances as a vice of consent or to prove that the written act was modified by a subsequent and valid oral agreement.

Finally, Appellants assert that the affidavit of Mr. Hergens, shows that there is a genuine issue of material fact that Mr. Collins's company was a subcontractor because, amongst other allegations, Mr. Hergens avers that Continuum paid for hotel rooms used by Mr. Collins's company and employees. However, Mr. Collins presented proof under oath in the form of bank statements that Southshore paid those bills without reimbursement. Thus, evidence was presented that Mr. Hergens is either mistaken or perjuring himself in a contract dispute that lacks a written contract. Therefore, Appellants argue that a genuine issue of material fact remains and was disregarded by the trial court.

*Appellees' Arguments*:

Acadia notes it entered into an oral contract with Continuum to complete work on certain school buildings, including, but not limited to, the floor-stripping project at CHS. Acadia contends that it contracted with Continuum to direct, control, and provide all of the labor for the project of certain school buildings. Pursuant to this agreement, Continuum furnished labor for the project and submitted a W-9 form to Acadia, as well as the certificate of liability insurance for its work on the project.

Additionally, and in order for Continuum to fulfill its contractual obligations with Acadia, Continuum subsequently hired Southshore, Mr. Collins's company, as a subcontractor, to provide additional labor to perform a portion of the total work required to complete the project.

Appellees further note that Acadia and Continuum agreed that Continuum would be compensated by labor hours performed by all workers on the project, including Southshore. During this project, and as the work was completed on each building, Continuum submitted invoices to Acadia, and these invoices included the

hourly-labor cost of the Southshore employees, among other contract laborers. Appellees contends that no other entity or company, including Southshore, submitted any invoices to be paid by Acadia, and that Acadia only paid Continuum for work on this project.

Appellees argue there is no factual support for Appellants' claim that Southshore entered into a separate oral contract with Acadia. In fact, Acadia contends it did not realize Mr. Collins was the owner of Southshore, and not an employee of Continuum, until after the accident.[2]

Furthermore, Appellees argue that Mr. Collins admits he was contacted by Continuum, not Acadia, to work on the project and sought payment from Continuum, not Acadia, for the work performed. Additionally, Appellees note that Mr. Collins and Southshore admitted it never discussed payment with Acadia, and when Southshore decided to increase its rate per square foot because of the condition of the floors, it informed Continuum, not Acadia. Additionally, Southshore employees submitted hourly-time-sheet-forms to Continuum for their work on the project.

Appellees note in their opposition to the motions for summary judgment that Appellants objected to a portion of the affidavit of Mr. Hensgens, wherein he stated that Continuum paid for the Southshore employees' hotel rooms, which Appellees acknowledge might have been stated in error. However, they contend that the payment of the lodging is not a material fact in this matter, when all other evidence and facts are considered.

---

[2] While Mr. Collins may have spoken with Mr. Wynn during the June 3rd telephone meeting between Mr. Wynn, representatives of Continuum, and Mr. Collins, apparently other representatives of Acadia were unaware that Southshore was a separate entity from Continuum.

Appellees further note that Appellants only objected to the affidavits of Mr. Wynn and Mr. Fields for the first time in their brief to this court. Furthermore, Appellees contend that Appellants only objected to the entirety of Mr. Hensgens's affidavit, as opposed to only the portion it referenced for the first time in their brief to this court. Appellees contend that pursuant to La.Code Civ.P. art. 966(D), these objections are untimely, as Appellants did not first object before the trial court at the summary judgment hearing.

Therefore, Acadia and Continuum contend that summary judgment was appropriate, as there was no genuine issue of material fact as to Acadia and Continuum's statutory-employment relationship with Mr. Collins and his company Southshore. Appellees argue that they are statutorily entitled to immunity from tort liability under the "two contract" theory of immunity, and Appellants' exclusive remedy for damages for the injuries that Mr. Collins sustained while working on the project is provided for in the Louisiana Workers Compensation Act ("LWCA").

## ON THE MERITS:

### *The statutory employer doctrine as applied to the relationship between Continuum, Acadia, and Southshore:*

The central issue in this matter is whether summary judgment was appropriately granted on the issue of whether Mr. Collins was employed as a subcontractor or contractor on the project for Acadia, as it has direct bearing on whether he may seek relief from Appellees or may only pursue relief through workers' compensation.

Whether or not a party is an independent contractor or employee is a factual determination based on evidence of right of control and supervision. *Elmore v. Kelly*, 39,800 (La.App. 2 Cir. 7/29/05), 909 So.2d 36. In determining whether Mr. Collins was a subcontractor of Continuum, we turn to the statutory-employer doctrine.

9

Louisiana has adopted a broad interpretation of the statutory employment doctrine, expressly extending the employer's compensation obligation and its corresponding tort immunity to a "principal," also known as a "statutory employer." *Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Auth.*, 02-1072, p. 7-8, (La. 4/9/03), 842 So.2d 373, 378.

Louisiana law defines a "statutory employer" in La.R.S. 23:1061(A)(2), the text of which reads as follows:

> A statutory employer relationship shall exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer.

Louisiana Revised Statutes 23:1061(A)(1) establishes a principal's responsibility for workers' compensation under the statutory employer doctrine, providing in pertinent part:

> [W]hen any "principal" as defined in R.S. 23:1032(A)(2), undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him[.]

Under the LWCA, an employee injured in "an accident while in the course and scope of his employment is generally limited to the recovery of workers' compensation benefits as his exclusive remedy against his employer and he may not sue his employer, or any principal, in tort." *Ramos v. Tulane Univ. of La.*, 06-487, p. 3 (La.App. 4 Cir. 1/31/07), 951 So.2d 1267, 1269. A principal is entitled to tort immunity, "but liable in workers' compensation, anytime the principal contracts to do any work, . . . and then contracts with another party for the performance of the work." *La. Workers' Comp. Corp. v. Genie Indus.*, 00-2034, p. 6 (La.App. Cir.

10

11/7/01), 801 So.2d 1161, 1165. Such tort "immunity is extended to all principals; however, far removed from the direct employer of the injured worker[.]" *Id.*

Here, the "exclusive remedy" provision in La.R.S. 23:1032 confirms that Appellants' rights and remedies under the LWCA are "exclusive of all claims, including any claims that might arise against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal under any dual capacity theory or doctrine." La.R.S. 23:1032 (A)(1)(b).

Louisiana Revised Statutes 23:1061 provides two bases for establishing a statutory employer relationship. The first, known as the "two-contract theory," occurs when the principal is in the middle of two employment contracts. La.R.S. 23:1061(A)(2). The second occurs when there is a written contract acknowledging the principal as the statutory employer. La.R.S. 23:1061(A)(3); *Allen*, 842 So.2d, at 378. The two-contract theory applies when: "(1) the [principal] enters into a contract with a third party; (2) that pursuant to that contract, work must be performed; and (3) that in order for the [principal] to fulfill its contractual obligation to perform the work, the [principal] entered into a subcontract for all or part of the work performed." *Genie Industries*, 00-2034, p. 7 (La. App. 4 Cir. 11/7/01) 801 So.2d 1161, 1166. "The purpose behind the two-contract theory is to establish a compensation obligation on the part of the principal *who contractually obligates itself to a party for the performance of work* and who then subcontracts with intermediaries whose employees perform any part of that work." *Fee v. S. Packaging, Inc.*, 18-1364, p. 14 (La.App. 1 Cir. 5/24/19), 277 So.3d 787, 798.

In this matter, we find that Acadia is a statutory employer, as it is a principal in the middle of two oral contracts. Continuum entered into an oral contract with Acadia to complete the work required on the project on several of its school buildings, including CHS. In order for Continuum to fulfill its contractual obligation

11

to Acadia, Continuum entered into an oral contract with Southshore to perform part of the work. Mr. Collins's meeting with Mr. Wynn notwithstanding, he admitted he never discussed payment with Acadia, Southshore's invoices for its work were only submitted to Continuum, and it was paid by Continuum and not Acadia.

Thus, we find there were clearly two separate employment service contracts in operation at the time of Mr. Collins's accident. The first contract was between Continuum and Acadia, in which Continuum agreed to provide certain floor-stripping services to Acadia. The second contract was formed when Continuum recruited Southshore to perform work to help Continuum satisfy its duties under the initial contract with Acadia. Southshore sent proposals to Continuum, not Acadia, for its work on the project. As acknowledged by Appellants, Southshore subsequently invoiced Continuum and was paid by Continuum for its work.

Notably, Continuum's oral contract with Acadia included the provision that Continuum would be compensated by the **labor hours performed by all workers** on the project. Continuum submitted a summary of all labor hours incurred for each school building to Acadia for payment, including that of Mr. Collins and the other Southshore employees, and no other entity or person submitted an invoice to be paid by Acadia for work performed on the floor-stripping project. Contrarily, Southshore was paid by Continuum for **square footage** of floor completed, rather than hours worked. Additionally, representatives of Acadia stated that they were unaware that Continuum had subcontracted with Southshore to perform work and had assumed that Appellants were employees of Continuum, and Acadia paid only Continuum directly.

Pursuant to the evidence, the law and jurisprudence outline above, it is clear that there is no issue of genuine material fact that Continuum hired Southshore as a subcontractor. It is also clear that the trial court's judgment is not rooted in

12

credibility determinations or the weighing of the evidence, but rather in the fact that neither Mr. Collins nor Southshore produced any evidence that a contract existed between Southshore and Acadia, save for the inferences Mr. Collins made about the June 3 meeting between the parties. Regardless, "[m]ere speculation will not defeat a motion for summary judgment, and conclusory allegations, improbable inferences, and unsupported speculation are insufficient to support a finding that a genuine issue of material fact exists." *Kinch v. Our Lady of Lourdes Reg'l Med. Ctr.*, 15-603, pp. 7–8 (La.App. 3 Cir. 12/9/15), 181 So. 3d900, 905.

Thus, we find that Acadia and Continuum were the statutory employers of Mr. Collins at the time of his accident, as Mr. Collins and his company, Southshore, were subcontractors to the contract Continuum entered into with Acadia to complete the work required on the project on several of its school buildings, including CHS.

Appellants' additional specific arguments are addressed below.

### *Use of the word "contractor" in the lien waiver*

Next, and regarding Appellants' argument that the lien waiver designated Southshore as a contractor.

The lien waiver at issue reads, in pertinent part, as follows (emphasis added):

> The undersigned hereby certifies that he has examined and is authorized to execute this affidavit as the owner, and/or officer, as the case may be, **of the below named vendor, lessor, laborer, supplier, consultant, subcontractor and/or contractor (hereinafter collectively referred to as The Contractor[)]** of all labor and materials or other movables, and/or improvements in, on, over, under, to, for, or at the project listed hereinbelow.

> In consideration for the payment to the Contractor of the claim, the receipt of which is hereby acknowledged, Contractor waives any and all claims to the liens which the Contractor may have on or affecting the project as a result of the claim, or for performing said labor and/or furnishing such materials or services. The Contractor further certifies that the last date on which the Contractor furnished any labor, materials or services included by the claim is shown below and that the Contractor also releases the project from any and every lien, charge or claim the Contractor may have on said date for work done, materials

13

furnished, or upon any other ground whatsoever not covered by the claim growing out of or in any way connected with any construction on or at the project.

The Contractor further certifies and warrants that all labor and/or materials for the project have been paid in full for all labor and materials supplied to, for, and in any way connected with any construction or repair of, or to, any building or portion of the project.

**The Contractor**: Southshore Building Services, Inc.

. . . .

**Description of the project**: Strip, wax, and seal floors at the following schools

. . . .

As to Appellants' argument that the lien waiver is nominally designating Southshore a "contractor," we find that document explicitly defines "contractor" in the first paragraph as "...vendor, lessor, laborer, supplier, consultant, subcontractor and/or contractor[.]" That definition in the lien waiver was noted by the trial court in its oral ruling on October 23, 2023, when it specifically found that the lien waiver was not indicative of Southshore being a contractor in this matter.

We agree and find that a reading of the full text of the lien waiver does not suggest that any different interpretation should be applied.

We further find that the lien waiver in and of itself does not address, clarify, or establish the relationship of the parties in this matter, as the waiver clearly defines "contractor" as inclusive of a subcontractor, and that it was being signed as evidence that Southshore had been paid in full under the terms of its oral contract on the project by Continuum and not Acadia. Finally, we find that Appellants' argument that the lien waiver is ambiguously written is clearly controverted by the other evidence presented. Thus, this argument by Appellants is without merit.

14

*__Three affidavits submitted by Appellees__*

As to Appellants' arguments regarding the alleged discrepancies in Appellees' affidavits submitted, the record shows Appellants only timely objected to one portion of one affidavit; specifically, the portion of the Mr. Hergens affidavit attesting that Continuum paid for the hotels of Southshore's employees. Despite the objection, Appellants took no action to further depose Mr. Hergens, or the other two affiants presented by Appellees as part of their objection/opposition. Regardless, and after review of the record, we find that the discrepancy regarding who paid for Southshore's hotel rooms does not create a genuine issue of material fact regarding the status of Mr. Collins's employment relationship with Acadia and/or Continuum. For the reasons stated above, we find Appellants are clearly subcontractors of Continuum. As to Appellants' other objections to the affidavits, we find that these objections are untimely as Appellants failed to first make their objections before the trial court. Thus, we will not consider those arguments. Therefore, we find this argument by Appellants is without merit.

**DECREE**

For the reasons stated above, the trial court's granting of judgments in favor of Appellees/Defendants, Continuum Restoration Services, LLC, and the Acadia Parish School Board, are affirmed. The costs of this appeal are assessed to Appellants, Patrick Collins, Dawn Collins, and Southshore Building Services, Inc.

**AFFIRMED.**